Scott Borison (State Bar Number 289456)
Borison Firm LLC.
1900 S. Norfolk Street
Suite 350
San Mateo, CA 94403
Tel.: (301) 620-1016
Fax: (301) 620-1018

*Keith J. Keogh
*Gregg M. Barbakoff
**Keogh Law, Ltd.**
55 W. Monroe St, Suite 3390
Chicago, IL 60603
Tel.: (312) 726-1092
Fax: (312) 726-1093
keith@keoghlaw.com
gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Proposed Putative Class*

* *Pro Hac Vice Application to Be Submitted*

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS REGAN, *individually, and on behalf of other similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>PINGER, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)** |

### CLASS ACTION COMPLANT

1. Plaintiff Lucas Regan ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368,

372 (2012).

2. The Pew Research Center has reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis. Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems. Plaintiff is one such person.

3. The TCPA was enacted to prevent companies like Pinger, Inc. ("Pinger" or "Defendant") from invading American citizens' privacy and to prevent illegal robocalls and text messages.

4. The TCPA regulates, inter alia, the use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls or send text messages to any cellular telephone number. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

5. Text messages are "calls" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

6. In 2012, pursuant to its rulemaking authority under the TCPA, the FCC imposed even stricter requirements on "advertising" and "telemarketing" text messages by making it unlawful to:

> Initiate, or cause to be initiated, any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]

47 C.F.R. § 64.1200(a)(2). This prior written consent requirement became effective on October 16, 2013.

2
92144                                                                                          CLASS ACTION COMPLAINT

7. The term "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8).

8. In other words, the agreement "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." *In re Rules & Regulations Implementing the TCP Act of 1991, et al.*, 30 FCC Rcd 7961, 8012-8013 ¶ 98 (F.C.C. July 10, 2015).

**THE PARTIES**

9. Plaintiff is a natural person and resident of the State of Illinois.

10. Defendant Pinger is a Delaware corporation with its corporate headquarters located at 97 South 2nd Street, Suite 210 in San Jose, California.

**JURISDICTION AND VENUE**

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a claim arising under federal law.

12. The events described herein relate to unlawful telemarketing calls to Plaintiff's cellular telephone number.

13. Venue is proper because Defendant resides in this District, and a substantial part of

3
92144                                                          CLASS ACTION COMPLAINT

the events or omissions giving rise to the claim occurred in this District.  *See* 28 U.S.C. § 1391(a)-(b).

## A BRIEF OVERVIEW OF TEXT MESSAGING

14. In recent years, companies who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which they can send bulk solicitations cheaply.

15. One of the newest types of such bulk marketing is to advertise through text messaging.

16. The open rate for text messages exceeds 99 percent, and 90 percent of those messages are read within three minutes.  Conversely, the open rate for email in the retail industry is 31 percent.

17. Unlike more conventional advertisements, text calls, and particularly wireless or mobile spam, can cost their recipients money because cellphone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized or whether they prepay for these plans.

18. The Federal Communication Commission ("FCC") has recognized that wireless customers are charged for incoming calls and text messages whether they pay in advance or after the minutes are used.   These types of damages are the same shared by the Plaintiff and the class members.

## FACTUAL ALLEGATIONS

19. Founded in 2005, Pinger creates and markets applications for cellular telephones.

20. One such application is known as "Sideline."  Sideline is a paid, subscription-based

application that allows users to create a virtual, second telephone line for their cellular telephones.

21. Plaintiff is the subscriber and regular user of the cellular telephone number (312) XXX-7052.

22. Plaintiff is a former subscriber to Sideline.

23. In or around March 2019, Plaintiff cancelled his subscription to Sideline and terminated his account.

24. Pinger subsequently engaged in a win-back campaign aimed at former customers.

25. On March 20, 2019, Pinger simultaneously sent via a computer-based dialing system approximately 10-15 identical text messages from (408) 479-6048 — at midnight — urging Plaintiff to sign up for Sideline service.

26. Each text message stated "Reply STOP to opt out of these texts."

27. Plaintiff responded to these text messages with a stop request.

28. Immediately after issuing the stop request, Plaintiff received a text from Pinger confirming the receipt of the stop request.

29. Despite knowing that it lacked consent to send the initial text messages to Plaintiff's cellular telephone number as it did not have signed prior express written consent, Pinger again simultaneously sent another 10-15 identical text messages from (408) 800-4361 on March 24, 2019.

30. The March 24, 2019 texts again solicited Plaintiff to re-open his Sideline account. As before, this text message blast arrived around midnight.

31. Pinger sent the March 24, 2019 text messages to Plaintiff's cellular telephone without signed prior express written consent.

32. Each text message stated "Reply STOP to opt out of these texts."

33. Plaintiff again responded to these text messages with a stop request.

34. Immediately after issuing the stop request, Plaintiff received a text from Pinger confirming the receipt of the stop request

35. Nevertheless, on April 3, 2019, Pinger again simultaneously sent approximately 10-15 identical text messages from (408) 800-4361, urging Plaintiff to purchase Sideline's services. Once again, this text message blast arrived around midnight.

36. Pinger sent the April 3, 2019 text messages to Plaintiff's cellular telephone without any consent let alone signed prior express written consent.

37. Each text message stated "Reply STOP to opt out of these texts."

38. Plaintiff once again responded to these text messages with a stop request.

39. Immediately after issuing the stop request, Plaintiff received a text from Pinger confirming the receipt of the stop request.

40. Once again, Pinger did not honor Plaintiff's opt-out requests. Instead, Pinger subsequently sent 3-4 similar text message blasts to Plaintiff's cellular telephone, despite Plaintiff's repeated instructions to stop.

41. Pinger sent these subsequent text messages to Plaintiff's cellular telephone without prior express written consent.

42. Pinger sent these texts via a computer based dialing system where there was no human on the line dialing the texts. This system is an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) ("ATDS") as it sends mass text messages automatically from lists of numbers.

43. By effectuating these unlawful text messages, Pinger caused Plaintiff the very harm that Congress sought to prevent — *i.e.* a "nuisance and invasion of privacy."

6
92144                                                                                                    CLASS ACTION COMPLAINT

44. Pinger's aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, and intruded upon Plaintiff's seclusion.

45. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559 ¶ 7 (Jan. 4, 2008).

46. Thus, Pinger's text messages harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

47. Pinger has a corporate policy of sending text messages using an ATDS in order to market and/or advertise Pinger's services to individuals such as Plaintiff without first gaining express written consent to send such messages.

48. Moreover, Pinger's practice of sending these illegal text messages after receiving a stop request demonstrates that it knowingly and/or willfully violated the TCPA with respect to Plaintiff and the proposed putative class.

## CLASS ALLEGATIONS

49. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States (the "Class").

50. The Classes are tentatively defined as:

NO CONSENT CLASS

All persons in the United States (1) to whose cellular telephone number (2) Defendant or anyone acting on its behalf placed a non-emergency text message (3) using substantially the same system(s) used to text Plaintiff (4) within 4 years of the complaint (5) a text

promoting Defendant's goods or services.

STOP TEXTING CLASS

All persons in the United States (1) to whose cellular telephone number (2) Defendant or anyone acting on its behalf placed a non-emergency text message (3) using substantially the same system(s) used to text Plaintiff (4) within 4 years of the complaint (5) after that person had sent a text message requesting such messages to stop.

51. Excluded from the Class are Pinger and any entities in which Pinger has a controlling interest, Pinger's employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

52. Plaintiff represents and is a member of each Class.

53. Plaintiff is presently unaware of the exact number Class members, but based upon the size and scope of Pinger's business and the automated nature of the texts, Plaintiff reasonably believes that the Class members number, at a minimum, in the thousands.

54. Plaintiff and all members of the Class have been harmed by Pinger's actions.

55. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits.

56. The members of the Class can be easily identified through records maintained by Pinger or its agents.

57. There are question of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual Class members. Those common questions of law and fact include, but are not limited to:

    A. Whether the system used to send the text messages was an ATDS;

    B. Whether Pinger engaged in a pattern of using an ATDS to send text messages to cellular telephone numbers without the prior express consent of the called party;

    C. Whether the text messages included or introduced an advertisement;

      D.      Whether the text messages constitute telemarketing;

      E.      Whether Pinger's conduct was willful or knowing; and

      F.      Whether Pinger's actions violated the TCPA.

58. As a person who received a text message on his cellphone that was sent using an ATDS without prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class.

59. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class or any Subclass.

60. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

61. A class action is the superior method for the fair and efficient adjudication of this controversy.

62. Class-wide relief is essential to compel Pinger to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Pinger is small because the statutory damages in an individual action for violation of the TCPA are small.

63. Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute and regulations to authorize such text messages to their cellular telephones.

64. Pinger has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

65. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

# LEGAL CLAIMS
# COUNT I
# Violation of the TCPA

66. Plaintiff restates and re-alleges the proceeding paragraphs as if fully set forth herein.

67. Pinger sent at least one text message to Plaintiff's cellular telephone number using an ATDS without Plaintiff's prior express consent.

68. The subject text messages were not sent for emergency purposes within the meaning of the TCPA.

69. Pinger willfully and knowingly violated the TCPA, including 47 U.S.C. § 227(b)(1)(A)(iii), each time it sent a text message to Plaintiff's cellular telephone number using an ATDS without Plaintiff's prior express consent.

70. The subject text messages to Plaintiff's cellular telephone number advertised the commercial availability or quality of Pinger's property, goods, or services, and therefore "included or introduced an advertisement" within the meaning of the TCPA.

71. The subject text messages to Plaintiff's cellular telephone number were for the purpose of encouraging the purchase or rental of, or investment in, Pinger's property, goods, or services, and therefore constitute "telemarketing" within the meaning of the TCPA.

72. Pinger did not have Plaintiff's "prior express written consent," as defined by 47 C.F.R. § 64.1200(f)(8), to send the subject text messages to Plaintiff's cellular telephone number.

73. Pinger willfully and knowingly violated the TCPA implementing regulations, including 47 C.F.R. § 64.1200(a)(2), each time it sent a text message to Plaintiff's cellular

telephone number, that included or introduced an advertisement or constituted telemarketing, using an ATDS without Plaintiff's prior express written consent.

74.  As a result of Pinger's illegal conduct, Plaintiff and the members of the Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

75.  Plaintiff and the Class are also entitled to and do seek injunctive relief prohibiting Pinger from violating the TCPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lucas Regan, on behalf of himself and the other members of the Class, prays for the following relief:

A. A declaration that Pinger's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

B. An injunction prohibiting Defendant from using an ATDS to send text messages to any cellular telephone number without prior express consent authorizing Defendant to send text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

C. An award of actual damages;

D. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every text message that violated the TCPA;

E. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every text message that violated the TCPA;

F. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

G. Such further and other relief the Court deems reasonable and just.

Dated: March 31, 2020

Respectfully submitted,

**LUCAS REGAN, individually and on behalf of all other similarly situated,**

<u>/s/ Scott C. Borison</u>
Scott Borison SBN 289456
Borison Firm, LLC
1900 S. Norfolk Street
Suite 350
San Mateo, CA 94403
Tel.: (301) 620-1016
Fax: (301) 620-1018

*Keith J. Keogh
*Gregg M. Barbakoff
**Keogh Law, Ltd.**
55 W. Monroe St, Suite 3390
Chicago, IL 60603
Tel.: (312) 726-1092
Fax: (312) 726-1093
keith@keoghlaw.com
gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Proposed Putative Class*

*\* Pro Hac Vice Application to Be Submitted*